SAXLEHNER v. EISNER & MENDELSON CO.

(Circuit Court of Appeals, Second Circuit.  April 19, 1905.)

No. 143.

1. TRADE-MARKS—FRAUDULENT USE—PROFITS—ESTOPPEL.
    Where defendant had fraudulently appropriated complainant's trade-marks and labels used on mineral waters, defendant was estopped to say that it would have been equally successful in selling this water had it used honest trade-marks and labels.
    [Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, §§ 93, 105, 112.]

2. SAME—ACCOUNTING.
    Where defendants had fraudulently appropriated plaintiff's trade-marks and labels and used the same in the sale of mineral water, plaintiff was not bound, on an accounting of profits, to show what part of defendant's goods it could have sold had it used honest marks and labels.
    [Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, §§ 104½, 112.]

3. SAME—EXPENSES.
    Where defendant was engaged in selling other goods as well as Hunyadi water on which it fraudulently appropriated complainant's trade-marks and labels, and on an accounting it appeared that the defendant's salesmen sold more goods of other character than they did of Huny-

adi water, the traveling expenses and salaries of such salesmen should be charged to general expenses, and not against the defendant's Hunyadi department exclusively.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, §§ 104½, 112.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 127 Fed. 1023.

On appeal by defendant from the final decree of the Circuit Court for the Southern District of New York, entered January 15, 1904, which confirmed the master's report, awarding $29,793.86 profits to the complainant, and directed the defendant to pay said amount, together with interest, costs, master's fees and disbursements, amounting in the aggregate to $31,874.36.

The report of the master contains the following conclusion:

"I am not convinced that the items under the head of 'traveling expenses,' 'salaries paid to salesmen' and 'Chicago expenses' are exclusively water department charges and as the proofs do not furnish any basis by which a definite proportion thereof as chargeable to this department can be computed, I have disallowed them as peculiarly 'Hunyadi' expenses and carried them to the general expense column whereby Hunyadi gets its proportionate credit.

"Making the foregoing disallowances and transfers and then employing defendant's method of computation I obtained the yearly results shown in the following tabulation:

| "Year.' | Profits. |
|---|---|
| 1892 | $  879 46 |
| 1893 | 9,026 22 |
| 1894 | 6,588 70 |
| 1895 | 3,238 02 |
| 1896 | 2,322 32 |
| 1897 | 2,180 64 |
| 1898 | 2,171 60 |
| 1899 | 2,618 83 |
| 1900 | 768 07 |
| | Total $29,793 86 |

"I accordingly find and report that the complainant is entitled to recover the sum of twenty-nine thousand seven hundred and ninety-three dollars and eighty-six cents ($29,793.86) as the net profit made by the defendant company during the period covered by the accounting by reason of the infringement complained of and adjudged."

This is the end of a long litigation between these parties. The preceding decisions will be found reported as follows: (C. C.) 88 Fed. 61; 63 U. S. App. 139, 91 Fed. 536, 33 C. C. A. 291; 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60; Id., 179 U. S. 43, 21 Sup. Ct. 16, 45 L. Ed. 77.

Charles G. Coe, for appellant.

Antonio Knauth, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge (after stating the facts). The two propositions principally relied upon by the defendant are:

First. That the recovery should be limited to the specific profits derived from the use of the red and blue label as distinguished from the use of the name "Hunyadi," the capsule and the size and shape of the bottle. As no testimony has been adduced showing the proportion of profits attributable to the label alone it is argued that nominal damages only can be recovered.

Second. That the master erred in charging the traveling expenses and salaries of salesmen employed by the defendant to the general expense account rather than to the Hunyadi department alone, which represented only about one-tenth of the defendant's business.

Neither of these contentions can be maintained. The label adopted by the defendant has been denounced by the courts as fraudulent and devised for the express purpose of enabling the defendant to trade on the good will established by the complainant. Had the defendant honestly intended to sell the bitter water imported by it on its merits it would not have dressed up its goods in such a way that even the intelligent and wary customer might be deceived. It might, for instance, have sold its water in ordinary bottles of the Apollinaris type, with a white oval label containing the words "Hunyadi Matyas" in black letters; but this it did not do and there is no evidence that the competing waters were ever sold in this country on their merits, viz.: in packages which clearly differentiated them from the complainant's water. The evident intent and purpose of the defendant was to poach on the reputation established by the Hunyadi Janos water. It started out to get a part of the complainant's profits and it succeeded, but we are familiar with no principle of law which will permit it to keep these profits. One who has fraudulently appropriated the trade-marks and labels of another will hardly be heard to say that he would have been equally successful had he used honest indicia and labels. It would be casting an intolerable burden upon the complainant in such cases if, after proving the fraud, the infringement and the profits, he were compelled to enter the realms of speculation and prove the precise proportion of the infringer's gains attributable to his infringement. The argument reduces itself to this: The defendant says: "If I had been honest I could have sold at least a part of these goods and as you have failed to show what that part is you are entitled to recover nothing." The answer is: "You were not honest." If authority be needed in support of the complainant's contention it will be found in the decision of the Supreme Court in this case. 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60.

During the period of the accounting the defendant sold 2,512,550 bottles of Hunyadi water. The testimony shows that this branch of the business was considered by the defendant's officers as both successful and lucrative. It is incredible that the shrewd business men in charge of the defendant company would continue a business for nine years which, according to the figures presented by them to the master, showed, with one exception, an annual loss and resulted in a total loss of $34,304. These figures were produced by adding to the cost of selling Hunyadi water items which should be added to the general expense of the business rather than to the water account alone. No separate account of the expenses of the water department was kept and the figures reported by the master were reached after marshaling the various items under the appropriate head. In a few instances items were charged to the water account, but the traveling expenses of salesmen were not among them. Naturally this should be so, for there can be no doubt that

these salesmen sold all the commodities dealt in by the defendant. One of them, in contradiction of the defendant's president, testified that he was paid by salary and not by commissions on the sale of Hunyadi water and that he sold about ten times as much Hoff's Malt Extract as Hunyadi water. Another salesman contradicts the defendant's president in other particulars. No one is called to corroborate him.

The subject of expenses presents simply a question of fact which was properly disposed of by the master. His report is most fair and conservative; as favorable to the defendant as it has any right to expect and we see no reason to disturb his findings. The great weight of testimony justifies the conclusion that the expenses of salesmen should be charged "to the general expense column whereby Hunyadi gets its proportionate credit."

The decree is affirmed.