[Sac. No. 2026. In Bank.—July 29, 1914.]

## THE MODESTO CREAMERY (a Corporation), Respondent, v. STANISLAUS CREAMERY COMPANY (a Corporation), et al., Appellants.

TRADEMARK—GEOGRAPHICAL NAME—FRAUDULENT USE—UNFAIR COMPETITION—INJUNCTION.—A corporation engaged in the manufacture and sale of butter in the city of Modesto, which has adopted and is using a device on its butter wrappers consisting of the word "Modesto" in large script, with a scroll or flourish thereunder wherein the word "creamery" appears, may have another corporation, engaged in the same business at the same place, enjoined from using the word "Modesto" on its wrappers in a manner calculated to de-

ceive the public into purchasing the butter of the latter corporation for that of the first corporation.

ID.—VIOLATION OF RIGHT TO TRADEMARK—FRAUD AS GIST OF ACTION FOR INJUNCTION.—The right of the plaintiff to an injunction in such case does not rest upon any ownership by it of the exclusive right to use the word "Modesto" as a trademark, for such word cannot be thus appropriated, but is founded upon the fraudulent injury to and appropriation of the plaintiff's trade.

ID.—SCOPE OF JUDGMENT ENJOINING USE OF TRADEMARK.—In this case the use of the name "Modesto" is not enjoined; all that is enjoined is the use of such name in a manner calculated to deceive purchasers into mistaking the defendant's product for that of the plaintiff.

ID.—ACCOUNTING BY DEFENDANT FOR PROFITS GAINED THROUGH USE OF TRADEMARK.—It is not error in such action to decree that the plaintiff shall have an accounting against the defendant of the profits made by the defendant through the sale of butter in wrappers having labels similar to those of the plaintiff.

ID.—PROFITS—RIGHT TO RECOVER IN CASE OF UNFAIR COMPETITION.—Entirely apart from the question of actual damages, the owner of a trademark is entitled to recover from an infringer the profits realized by the latter from sales under the simulated trademark. The same rule applies to cases of unfair competition, in which, while there is no violation of an exclusive right in a technical trademark, the defendant has used devices calculated to pass off his goods as those of the plaintiff.

APPEAL from a judgment of the Superior Court of Stanislaus County and from an order refusing a new trial. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

Jordan, Rowe & Brann, H. K. McKevitt, and L. J. Maddux, for Appellants.

J. W. Dorsey, W. E. Cashman, L. L. Dennett, and J. M. Walthall, for Respondent.

SLOSS, J.—The defendants appeal from the judgment and from an order denying their motion for a new trial.

The action was brought to enjoin the defendants from selling butter marked with labels alleged to have been designed in imitation of plaintiff's label, and to recover damages for profits diverted from plaintiff or made by sales by defendants of butter so labeled.

The findings, which are responsive to the issues made by the pleadings are, in effect, as follows: Plaintiff is a corporation which, since the year 1900, has been manufacturing butter at the city of Modesto, and selling such butter at Modesto and elsewhere in the state of California. In the conduct of its business it has adopted and used as a symbol and name a device (shown on a wrapper attached to the complaint and marked Exhibit A) consisting of the word "Modesto" in large script, with a scroll or flourish thereunder, the word "creamery" appearing in said scroll. The words "churned daily at Modesto, Cal.," also appear upon the wrapper. Butter of plaintiff's manufacture, so wrapped and marked, acquired a valuable reputation, and is known by purchasers and the public as "Modesto Creamery Butter" or "Modesto Butter," the word "Modesto" having acquired "a special significance and secondary meaning apart from its geographical sense," and being taken to signify the origin, manufacture, and qualities of plaintiff's butter. The defendant Sherry-Freitas Company is engaged in the business of buying and selling butter. In April, 1910, said defendant, with the intent to deceive persons intending to buy plaintiff's butter, and to divert trade from plaintiff to itself by palming off its goods for those of plaintiff, offered its butter for sale under a wrapper, a copy of which is designated Exhibit B. This wrapper contained the word "Modesto" in large type, and under it the word "brand" in smaller letters. By so doing defendant has endeavored to cause it to be believed, and has caused it to be believed, by the public that its butter was made in the city of Modesto, which was not the fact. The use of said wrapper misled and deceived customers into buying defendant's butter in the belief that it was plaintiff's product. Said butter was sold at a price less than that at which plaintiff's butter was offered to the public.

The defendant continued the sale of butter under the label or wrapper designated "Exhibit B" until about September 1, 1910, when it began to sell and offer for sale, and has since continued to sell butter under a label or wrapper designated as "Exhibit C." This wrapper bore the word "Modesto" in script type similar to that appearing on "Exhibit A." The butter so wrapped has been made by the defendant Stanislaus Creamery Company at the city of Modesto. The findings relative to the purpose with which "Exhibit C" was used and the

effect upon the public and upon plaintiff's trade of the use of such wrapper are, except with respect to the place of manufacture, similar to the findings, above outlined, in connection with "Exhibit B." It is further found that the defendant Stanislaus Creamery Company was organized by the officers and directors of the other defendant, Sherry-Freitas Company, with the object of having said Stanislaus Creamery Company assist its codefendant in the latter's wrongful acts. The court also finds that the defendants will, unless restrained, continue the unfair competition complained of.

The judgment declares that plaintiff is the owner of and has the exclusive right as against the defendants and each of them, to use the word "Modesto" in the manner in which it appears on its butter wrapper. It adjudges that defendants be enjoined from using in connection with the manufacture, advertisement or sale of butter, the wrapper, labels or brands shown on "Exhibit A," "Exhibit B," or other representation containing the word "Modesto" as its prominent feature "in a manner calculated to deceive the trade or public into purchasing the product of defendants, or either of them, as and for the product of plaintiff"; from offering for sale or selling any butter under wrappers, labels . . . or representations in imitation or likeness of any of said exhibits, which will be calculated to mislead the public into buying said product as and for the product of the plaintiff; and from advertising, representing, labeling or wrapping butter in such manner as to cause it to be palmed off, sold or mistaken for plaintiff's product. Finally, it is determined that plaintiff is entitled to an accounting of the profits diverted from plaintiff or made by defendants, or either of them, by the sale of butter under "Exhibit B" or "Exhibit C," and the court reserves power to take such accounting before itself or a referee.

The relief granted by the decree does not rest upon any ownership by plaintiff of the exclusive right to the use of the word "Modesto" as a trademark. A "designation . . . which relates only to the . . . place where the thing is produced" cannot be appropriated as a trademark. (Civ. Code, sec. 991.) The suit is one to restrain unfair competition. The principles involved have been declared in numerous decisions, not a few of which have been rendered by this court. In *Banzhaf* v. *Chase*, 150 Cal. 180, [88 Pac. 704], they are stated in the following language which, with the substitution of the word

"butter" for "bread" (the article which occasioned the controversy in the Banzhaf case) is entirely appropriate to the case at bar. "The case of the plaintiffs . . . is based on fraud. It rests on the right of the plaintiffs to restrain the conduct of the defendant whereby he, in order to injure the plaintiffs and benefit himself, simulates the plaintiff's goods, deceives the plaintiff's patrons into the belief that his bread is that made by the plaintiffs and thereby induces them to buy his own bread instead of the plaintiffs', thus, by fraud and deception, depriving the plaintiffs of the profits of such sales and appropriating the same to his own use. The right to prevent such an injury by injunction does not depend on the ownership by the plaintiffs of any particular word, phrase, or device, as a trademark. . . . The right of action in such a case arises from the fraudulent purpose and conduct of the defendant and the injury caused to the plaintiffs thereby, and it exists independently of the law regulating trademarks or of the ownership of such trademark by the plaintiffs. The gist of such an action is not the appropriation and use of another's trademark, but the fraudulent injury to and appropriation of another's trade." (See, also, *Weinstock, Lubin & Co.* v. *Marks,* 109 Cal. 529; [50 Am. St. Rep. 57, 30 L. R. A. 182, 42 Pac. 142]; *Dodge, S. & Co.* v. *Dodge,* 145 Cal. 380, [78 Pac. 879].)

The judgment does not assume to protect plaintiff in the exclusive use of the word "Modesto." All it does is to declare that the plaintiff has a right superior to that of defendants to use such word *in the manner in which it appears on its wrappers.* It enjoins the defendant from using the wrappers designated "Exhibit B" and "Exhibit C" or from using any wrapper containing the word "Modesto" in a manner calculated to deceive the public into purchasing defendants' product as and for that of plaintiffs. The other parts of the injunction are directed against other practices tending to thus deceive the public and thereby injure the plaintiff.

So far as the particular labels, "Exhibit B" and "Exhibit C" are concerned the evidence fully justifies the findings that these wrappers were adopted with the purpose of deceiving the public as above stated, and that they accomplished this purpose. This is virtually conceded by appellants with respect to "Exhibit B," which was applied to butter not in fact manufactured at Modesto.

The word "Modesto" is the most prominent feature of "Exhibit C," as it is of "Exhibit A." The type in which the word is printed is so similar on the two labels that this circumstance, in connection with the other facts shown, amply warranted the conclusion that the use of "Exhibit C" was intended to have, and did have, the effect of misleading the public into the belief that the butter so marked was that manufactured and sold by plaintiff.

The argument that plaintiff cannot enjoin the use of the word "Modesto" unless such word has acquired a secondary meaning apart from its geographical sense—unless, that is to say, it has come to mean the goods of plaintiff rather than the place of their manufacture—is, therefore, beside the mark. The use of the name "Modesto" is not enjoined. All that is enjoined is the use of such name in a manner calculated to deceive purchasers into mistaking defendants' product for that of plaintiff. It is true that there is a finding that the word "Modesto," as applied to butter, has acquired the secondary meaning spoken of. This finding would have been necessary to support a decree recognizing plaintiff's exclusive right to the use of the word in its secondary sense. (38 Cyc. 770.) But it is not material as a basis for the limited decree that was here made.

It is urged that the use of "Exhibit B" should not have been enjoined, because the evidence showed that there had been no use of this wraper for several months preceding the commencement of the action, and there was no proof that defendants intended to use it in the future. But, even if this part of the injunction were eliminated, the general restraint against the use of any wrapper calculated to deceive the public would still operate to prevent the use of "Exhibit B." If there was any error in extending the injunction so as to cover this wrapper specifically, the error was technical merely, and without prejudice.

Finally, the claim is made that the court erred in decreeing that plaintiff should have an accounting of the profits made by defendant through sales of butter under wrappers having the mark of "Exhibit B" or "Exhibit C." So far as "Exhibit B" is concerned, it is contended that plaintiff suffered no damage, having sold its entire output, without diminution in price, during the period in which "Exhibit B" was used. But the decree does not order an accounting of damages as

such.   The accounting is to be directed to "profits diverted from the plaintiff, or made by the sale of any butter sold by the defendants or either of them under wrappers bearing the label and brand of 'Exhibit B' and 'Exhibit C' attached to the complaint."   We think this provision should be construed as covering simply the profits made by the defendants through the use of these wrappers.   In contemplation of law, such profits are diverted from plaintiff, being obtained through the improper invasion of plaintiff's trade rights.   Entirely apart from the question of actual damage, the owner of a trademark is entitled to recover from an infringer the profits realized by the latter from sales under the simulated trademark. (*Graham* v. *Plate*, 40 Cal. 593, [6 Am. Rep. 639].)   The same rule applies to cases of unfair competition, in which, while there is no violation of an exclusive right in a technical trademark, the defendant has used devices calculated to pass off his goods as those of plaintiff. (38 Cyc. 909; *Regis* v. *Jaynes*, 191 Mass. 245, [77 N. E. 774] ; *Saxlehner* v. *Eisner etc. Co.*, 138 Fed. 22, [70 C. C. A. 452].)

The objection to an accounting with respect to "Exhibit C" is based on the contention that the use of this brand was not an invasion of plaintiff's rights.   This contention is answered by what we have said in an earlier part of this opinion.

The judgment and the order denying a new trial are affirmed.

Shaw, J., Henshaw, J., and Lorigan, J., concurred.