[Civ. No. 23844. Second Dist., Div. Three. Feb. 24, 1960.]

ARVO OJALA, Respondent, v. EDWARD H. BOHLIN, Appellant.

Birger Tinglof for Appellant.

Milo V. Olson for Respondent.

SHINN, P. J.—The gravamen of the action is unfair competition in the manufacture and sale of a gun holster. Defendant was enjoined from manufacturing or selling holsters under plaintiff's original and unique design and plaintiff was awarded compensatory damages. Defendant appeals.

The court found the following facts: Plaintiff conceived and developed the design of "Hollywood Fast Draw Holster" which would permit the cocking of a single action revolver and free turning of the cylinder while being withdrawn from the holster. This was accomplished in part by a specially designed metal interior; the basic design of plaintiff's holster was not public property in the trade either before or after the year 1953 when plaintiff went into the business of selling his holsters; in August 1956 plaintiff commenced and thereafter continued to advertise his holsters in "Guns" magazine. In June 1956 plaintiff took his patterns to defendant who agreed to make the holsters for $20 each; plaintiff delivered to defendant his metal designs and patterns and defendant agreed he would not compete with plaintiff in the manufacture or sale of such a holster. Defendant gained important and otherwise unobtainable information as to the design, construction and assembly of the holster. Further facts were found as set out in the margin.[1] Thereafter defendant increased the price of manufacturing the holsters and plaintiff resumed the manufacture of them himself; he was manufacturing them in March 1957 at which time defendant ran an ad in "Guns" magazine which contained a picture of a holster which was substantially a duplicate of plaintiff's "Hollywood Fast Draw Holster"; defendant advertised his as "the lightning draw" holster in an advertisement which stated that defendant "pioneered" the lightning draw holster. The holster advertised by defendant is a duplicate of plaintiff's "Hollywood

---

[1] "VIII. That information as to the design, construction and assembly of the holster constituted confidential information of great value to the plaintiff in that at that time, there was not on the market any contour-type metal-lined holster, and was given to the defendants, and each of them, only because of the trust and the integrity of the defendants, and each of them, upon the basis of a contractual relationship between the parties to-wit: That the defendants, and each of them, would not compete in any way in the manufacture of a contour-type metal-lined holster with the plaintiff herein."

Fast Draw Holster''; it was untrue that defendant pioneered the design or development of that holster; defendant appropriated to himself the basic design of plaintiff's holster; defendant's advertising as aforesaid constitutes unfair competition with plaintiff and the similarity of the design of defendant's holster with that of plaintiff also constitutes unfair competition, and although plaintiff had demanded that defendant cease said practices, defendant has refused to do so. Plaintiff has a reputation as the world's fastest fast draw artist which is closely associated with his reputation as a pioneer and designer of the fast draw holster; he has spent years building up this reputation, is one of the world's top experts and teaches the art to motion picture and television actors; the sale of his product is largely dependent upon such reputation; the continuation by defendant of his aforesaid acts has caused plaintiff great and irreparable harm and damage not compensable in damages. Plaintiff has expended over $7,000 in advertising; defendant's advertising is so similar that it has destroyed and impaired the value of plaintiff's advertising upon which plaintiff is largely dependent. It was further found that due to the facts aforesaid, plaintiff had sustained damages and loss of profits in the sale of holsters that plaintiff otherwise would have received and that ''plaintiff sustained damages as a result of defendant's said conduct and unfair competition in the total amount of $8,945.88.'' By the judgment defendant was ordered to pay plaintiff the above mentioned amount and to desist from the manufacture, sale, distribution or advertising for sale, of a fast draw holster that is based on or is a copy of the Arvo Ojala Hollywood Fast Draw Holster. The judgment specifically describes plaintiff's holster and the features of it which are unique and which are not to be incorporated in holsters manufactured or dealt in by defendant.

The contentions on appeal are that there was no substantial evidence to support any of the following findings: (1) defendant agreed not to compete with plaintiff by manufacturing or selling holsters patterned on plaintiff's design; (2) plaintiff's design is unique and novel and the disclosure thereof to defendant was confidential information; (3) defendant's practices in manufacturing and selling identical holsters constituted unfair competition; (4) plaintiff sustained damages in the sum of $8,945.88; and (5) that the court erred in the receipt of evidence tending to prove defendant's reputation in the industry.

The first point is without merit. Defendant says in his opening brief that the only evidence in the record concerning the agreement not to compete was the testimony of plaintiff himself that when he arranged to have the holsters manufactured by defendant the latter told him that he would not compete with him (plaintiff) in the manufacture or sale of the holsters, that he would never compete with plaintiff and that plaintiff took it for granted he would not compete. Defendant says that in his testimony he denied having had such a conversation and denied that he had at any time promised that he would not manufacture or sell the holsters on his own account. Defendant says: ''But could plaintiff's testimony on this alleged contractual relationship with the defendant possibly be true?'' He then alludes to evidence that he had been manufacturing fast draw holsters for some 30 years on the same basic design used in plaintiff's holster. Ojala, he says, was ''a recent newcomer in the field of making holsters'' and that considering the comparative situation of plaintiff and defendant ''It would tax one's credulity to the breaking point to find that Ojala's testimony is true on this crucial testimony of his claimed contract never to compete.'' The obvious and conclusive answer to this contention is that on this point the trial judge believed plaintiff and did not believe Bohlin.

Upon the second point defendant's contention also must fail. The court found: ''That said holster was designed with a contour-type metal-lined holster with a completely free cylinder so that the gun could be cocked in the holster at the time of the drawing and that this was the basic design of the HOLLYWOOD FAST DRAW HOLSTER.'' Plaintiff testified that he designed this special holster in 1953 and supplied defendant with the master pattern in 1956. Defendant says: ''Plaintiff did testify substantially to the above effect, but the testimony of defendant Bohlin and other witnesses, coupled with the actual exhibits in evidence, completely destroyed plaintiff's contentions.'' It appears to be defendant's argument that before plaintiff's final design was completed he, defendant, was making a holster using the basic pattern of metal-lined contour to permit fast draw which plaintiff uses. He argues that there was no basic difference in the fast draw qualities between the holsters he had been making and the one designed by plaintiff. The two types of holsters were before the court and were demonstrated by gun experts. Admittedly there was some difference in the designs of the two, although

each type had metal inserts to facilitate a fast draw. The court could well have asked, why did defendant adopt plaintiff's design in preference to his own if it was not superior, without finding a satisfactory answer in the evidence of defendant. It clearly appears that the court found that plaintiff's design was novel for the reason that it permitted greater freedom for the turning of the cylinder in the holster and enabled the user to make a faster draw than could be done with the holster previously made by defendant. There was substantial evidence to support this finding and it results that the question appears here as one of fact and not of law. We may not reexamine that factual issue.

The third point is that there was no evidence of unfair competition. We cannot agree with this contention. We shall first consider the nature of the competition and its consequences.

 Defendant commenced advertising his holster, which is a duplicate of plaintiff's, in the magazine in which plaintiff was advertising. Defendant advertised that he had "pioneered" the lightning draw holster and his advertisement carried a picture of his holster that was indistinguishable in design from plaintiff's, which also was pictured. Defendant's advertisements that he was the pioneer in designing *these holsters* was a representation that he was the designer of the holster which plaintiff was manufacturing and advertising. This appears from defendant's ad which reads in part as follows: " 'We are pioneers in designing *these Holsters* and have many years' experience in making Fastdraw Holsters for motion picture actors and peace officers' . . . and 'The Holster is made with double thickness of leather, with a special metal fitting between the leathers, thus allowing the gun to slide in or out without drag or binding' . . . 'This Belt and Holster has no equal for quick drawing qualities.' '' (Emphasis added.) These ads were clearly false and misleading.

We have next to consider whether the acts of defendant which we have related constituted unfair competition for which plaintiff was entitled to injunctive and compensatory relief.

Defendant contends that plaintiff's rights are derived solely from the claimed agreement not to make or sell holsters of plaintiff's design. This is not strictly true. Plaintiff's design was entrusted to defendant for one purpose only, namely, the manufacture of the holsters for plaintiff. We

regard defendant's agreement not to compete as potent evidence of his duty as a trustee of the design. Having received the design for use in the interests and for the benefit of plaintiff, defendant had no right to use it in any other manner to plaintiff's detriment. The court found that the design was given to defendant in confidence; the information imparted was of great value to plaintiff and was imparted to defendant because of plaintiff's trust and his belief in the integrity of defendant and his confidence that defendant would keep his promise not to compete. It is clear from these facts that defendant assumed the duties of a trustee with respect to information that was to be used solely for plaintiff's benefit. One who is so entrusted violates his duty when he uses the information for his own benefit and to the detriment of the trustor.

Section 2219 of the Civil Code reads in part as follows: "Every one who voluntarily assumes a relation of personal confidence with another is deemed a trustee, within the meaning of this chapter. . . ." The court's finding was that plaintiff reposed confidence in defendant, believed that defendant would use his design solely in his (plaintiff's) interest and would not make, manufacture or sell holsters which were identical with those of plaintiff. Since plaintiff assured himself that defendant would not compete with him, it would seem to necessarily follow that he felt safe in showing defendant his design and that he would not have done so had he doubted that defendant would respect his confidence. The fact that defendant accepted the confidence that was reposed in him was amply shown by the assurance that he gave plaintiff that he would not use the design for his own benefit. Using the design in competition with plaintiff was a breach of the relation of personal confidence which defendant had voluntarily assumed. It was a violation of defendant's duty not to use confidential information adversely to the interests of plaintiff. (Civ. Code, § 2229.) It was a wrong which gave plaintiff a right of redress.

 One who receives confidential information to enable him to make a novel product for another, and for that purpose alone, may be enjoined from using it for purposes of his own to the detriment of the one from whom the information was received. (*Shellmar Products Co.* v. *Allen-Qualley Co.*, 36 F.2d 623, a leading case.)

Defendant argues that unfair competition consists only of

palming off one's goods as those of another. He says that his name was stamped on the bottom of each of his holsters and that no one could have been deceived into believing that he was selling plaintiff's holsters.

The scope of unfair competition may not be limited to a particular type of deception. The legal concept of unfair competition has evolved as a broad and flexible doctrine with a capacity for further growth to meet changing conditions, and there is no complete list of the activities which constitute unfair competition. (87 C.J.S. 245.) It is self-evident that the misuse of confidential information in breach of trust and in competition with the trustor would be unfair competition. For that reason alone equity would grant appropriate relief.

Moreover, section 3369, Civil Code, provides that unfair competition may consist of ''unfair or fraudulent business practice and unfair, untrue or misleading advertising.'' It appears beyond question from the facts found that defendant's business practice was unfair and that his advertising was false and misleading. Stamping his name upon each holster was merely confirmatory of defendant's representation that he was the pioneer, the originator and the long established manufacturer of the particular fast draw holster and that plaintiff was an interloper.

Unfair competition may consist of appropriating the property of another and selling it as one's own. (*International News Service* v. *Associated Press*, 248 U.S. 215 [39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293]; Nims' The Law of Unfair Competition and Trade-Marks, 4th ed., vol. 2, p. 975.) Plaintiff made out a clear case for injunctive relief upon the ground of unfair and misleading representations respecting his product.

Defendant's next point is that there was no evidence to justify the award of damages in the sum of $8,945.88. Our attention is called to evidence that in 1956 plaintiff sold 628 holsters and belts; in 1957 he sold 1,282 and in 1958, until April 15th, he sold 612 holsters and belts and 100 holsters without belts at a profit of $6.25 per rig. During the same period defendant sold only 267 holsters at a total price of $3,222.90. He sold $567.50 worth at wholesale and he calculated his total profit at $646. He contends that at most this latter amount should have been awarded to plaintiff as damages.

For support for his argument that in cases of unfair competition "the general rule for damages is the 'profit made by the wrongdoer' " defendant cites *Modesto Creamery Co.* v. *Stanislaus etc. Co.*, 168 Cal. 289 [142 P. 845]. The case does not support defendant's contention. The court approved of the provision of a judgment for an accounting of the profits diverted from plaintiff by defendant's wrongful activities as an element of damage "entirely apart from the question of actual damage." The court stated that the rule of damages for unfair competition is the same as for unauthorized use of a trademark, citing *Graham* v. *Plate*, 40 Cal. 593 [6 Am.Rep. 639], in which it was said that while the profit made by the wrongdoer is a proper element of damage "It is evident that the profit realized by the wrong-doer is not the *only* measure of damages. The spurious article may have injured the credit of the genuine one, and the profits of the owner of the trademark may have been greatly reduced, whilst the wrongdoer has made little or no profit. But whilst the profit made by the latter does not limit the recovery, the owner of the trademark is entitled to all the profit which was in fact realized."

Plaintiff was entitled to a recovery proportionate to the detriment he has suffered. (Civ. Code, § 3333.) This cannot in all cases be limited to the amount of the wrongdoer's gain, which may be more or less than the loss suffered by the injured party. (*Gregory* v. *Spieker*, 110 Cal. 150 [42 P. 576, 52 Am.St.Rep. 70].) Defendant's contention, if carried to an extreme, would deny all damages to a manufacturer or merchant if, perchance, as a result of unfair competition he should be forced out of business by one who had made no profit in accomplishing that result.

While insisting that he could have been held liable for no more than his profits, defendant maintains that there was no evidence that plaintiff has suffered any injury to his business in the way of lost profits or any injury to his reputation and standing as the originator of the holster in question that may cause him monetary loss. We cannot agree. There was ample evidence to support the court's findings on this feature of plaintiff's damages.

A great deal of evidence was received for the purpose of proving plaintiff's reputation in a peculiar field of education, namely, teaching actors, fast draw artists and would-be fast draw artists, the art of grabbing a gun from a holster and firing it in the fewest possible fractions of a second. There were numerous pictures of gun-toting male and glamorous

female personalities familiar to motion picture and television viewers, all wearing Hollywood Fast Draw Holsters; also puffing magazine articles and other writings. Teaching was but a part of plaintiff's business. Not to be outdone by plaintiff, defendant produced evidence that he also had made holsters for celebrities and quasi-celebrities. The court was duly impressed by plaintiff's evidence and found "plaintiff had so developed this art of fast draw that he was proficient, and probably the 'top' fast draw artist of the world, as early as 1951 or 1952." It was also found that plaintiff's business is largely dependent upon his reputation; defendant's wrongful conduct has caused plaintiff great and irreparable harm; the sale of plaintiff's holsters was also largely dependent upon plaintiff's advertising and receiving orders through the mail; defendant's activities have had the effect of destroying or impairing the value of plaintiff's advertising; plaintiff has suffered loss of profits he otherwise would have received. Another feature of defendant's competition was that he was advertising and selling single holsters for $36.50 and double holsters for $48. Ojala's price for singles was $39.50 and for doubles $59.50. Also in the interval between September 1, 1956, and April 1958, defendant sold $567 worth of holsters without profit to himself.

Defendant's argument is that even if injury to plaintiff's business reputation was compensable no award could be made in the absence of evidence which established with certainty the amount of detriment suffered in terms of money. The extent to which plaintiff's business reputation had suffered and might suffer in the future was not susceptible of direct proof. It was an inescapable inference from the facts proved that plaintiff's reputation was bound to suffer. Through long continued and patient effort, plaintiff had established himself upon a unique pedestal and had thereby acquired for himself a prosperous business. That defendant's activities tended directly to remove plaintiff from his hard-won eminence cannot be doubted; and another factor to be taken into consideration was that the effect of defendant's conduct may continue into the future.

Injury to business reputation is compensable. The rule is stated in the Restatement of Torts, section 746, comment (e), as follows: "But the defendant's conduct may also cause harm which will materialize in the future, after the suit is terminated. That is, his conduct may harm the reputation

in the market of the plaintiff's goods, services or business. The lowered reputation is a present harm though its effect may be felt in the future. Harm to the reputation of the plaintiff's goods, services or business is, therefore, an element of recoverable damages."

It is axiomatic that where substantial compensable injury is shown but the amount of the damage cannot be ascertained with reasonable certainty under acceptable formula made applicable by rules of law, the question rests in the sound judgment and discretion of the trier of fact. (25 C.J.S. 494-496.) Resort must be had to the best evidence that is available, even in cases of breach of contract. (*Hacker etc. Co.* v. *Chapman Valve Mfg. Co.*, 17 Cal.App.2d 265 [61 P.2d 944]), and, of course, in tort cases (*Story Parchment Co.* v. *Paterson Parchment Paper Co.*, 282 U.S. 555 [51 S.Ct. 248, 75 L.Ed. 544].)

In order for us to reject the court's finding as to the amount of damage it would have to appear that the award was unsustainable in reason. It would have to appear definitely that the maximum amount that should have been allowed to plaintiff was something less than the amount that was awarded. If the amount was excessive—to what extent was it excessive? By what rule of law could this court determine the amount of the excess? The trial court did not take into consideration any improper element of damage, nor did it commit any other error of law. Its determination was so exclusively within its fact finding powers, which in our opinion were exercised with judgment and discretion, as to preclude any attempt upon our part to order a reduction of the damages or to hold that that issue should be retried.

Reference has been made to pictures of plaintiff instructing Hollywood notables in the use of his holster and to writings descriptive of his prowess with a hand gun. This evidence was received over defendant's objection and the ruling is assigned as error. We detect no error. The evidence tended in a measure to prove plaintiff's activities as a teacher and his business relations with customers for whose trade defendant was competing.

It is argued incidentally that defendant's agreement not to compete with plaintiff was unenforceable because of uncertainty. It is also argued that the agreement was void because it was not to be performed within a year. (Civ. Code, § 1624, subd. (1); Code Civ. Proc., § 1973, subd. 1.) Neither point is well taken. The judgment rests upon defendant's

liability for unfair competition. The liability arose out of defendant's unfairness and not out of his promise to act fairly, which he was bound to do without any promise.

The judgment is affirmed.

Ford, J., concurred.

Vallée, J., did not participate.