[No. A014966. First Dist., Div. One. May 21, 1985.]

TELE-COUNT ENGINEERS, INC., Plaintiff and Appellant, v.
PACIFIC TELEPHONE AND TELEGRAPH COMPANY et al.,
Defendants and Respondents.

456

458

COUNSEL

Robert E. Mann and Alvin J. Schifrin for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Robert M. Westberg, James J. Walsh, Bronson, Bronson & McKinnon and Gary L. Hultquist for Defendants and Respondents.

OPINION

NEWSOM, J.—Appellant seeks reversal of judgment in favor of respondents Pacific Telephone and Telegraph Company (hereafter Pacific) and Vernon Graphics, Inc. (hereafter Vernon) on its causes of action for conspiracy to misappropriate trade secrets and disclosure of confidential information. The following is a summary of the pertinent facts.

Pacific employs a process known as "cable counting" to take inventory of its telephone system. Cable counting consists of gathering and reporting data from "cable pairs," which are the pairs of wires which connect telephones to Pacific's offices.

Prior to 1968, Pacific performed its cable counting task, usually on an annual basis, using its own employees. Pacific developed forms that were used to compile the information gathered during the cable counting process.

Cable counting became an increasingly time-consuming and labor-intensive process as the inventory became more complicated, and thus in 1967 Pacific began to use outside contractors to perform this function. Vernon contracted with Pacific to do the 1968 cable count. In 1969 and 1970, the ITC Corporation handled the cable count for Pacific.

Edwin Dunn, founder and president of Tele-Count Engineers, Inc. (hereafter Tele-Count or appellant), was employed by ITC Corporation and participated in the 1970 cable count. Thereafter, Dunn discussed with Pacific

employees the formation of his own independent business to do cable counting. Part of this discussion focused upon improvement of the existing cable counting forms by Dunn for more efficient manual use and possible future computer compatibility. Dunn was aware that the forms currently being used for the cable count had been supplied by Pacific.

Dunn redesigned the existing forms, then met with Pacific employees in July of 1971 to discuss his participation in the upcoming cable count. Dunn's testimony was that he disclosed his improvements in the forms to Pacific employees with the reservation that no other contractors were to be shown or use the modifications. According to Dunn, Pacific agreed to this condition.

Dunn's improvements in the forms were apparently novel and unique. Two of the forms designed by Dunn were used to report the results of the cable count to Pacific; a third form was used to enter data into a computer by means of an optical scanning device.

In September of 1971, Dunn formed and incorporated Tele-Count. He subsequently sent a letter to Pacific, dated October 6, 1971, in which, referring to the July meeting, he "stated that our suggestion for improving the [Pacific] forms was without reservation or compensation to [Tele-Count]." He also requested, however, that any contract "contain a paragraph excluding disclosure to any competing bidder or future bidder in relationship to our work on computer forms, computer programs or computer methods."

On November 8, 1971, Pacific and Tele-Count entered into a written contract which provided for Tele-Count to perform the 1971 cable count. According to paragraph 13(d) of this agreement, Pacific was given "unrestricted right for all purposes to reproduce, use and disclose any and all information, knowledge or data originated by [Tele-Count] and its employees and agents in connection with the work performed under this agreement, with the *exception* of the *computer program* used by [Tele-Count] in completing this work." (Italics added.)

Tele-Count completed the 1971 cable count. In 1972 a similar contract was executed which contained a clause giving Pacific unrestricted right to use or disclose all information "originated by" Tele-Count, without the limitation stated in the 1971 agreement.[1]

---

[1]Paragraph 14(f) of the 1972 agreement provided: "Contractor [Tele-Count] agrees that Owner [Pacific] shall have the unrestricted right for all purposes to produce, use and disclose any and all information, knowledge or data originated by contractor and its employees and agents in connection with the services performed under this contract."

Dunn testified that he was hesitant to seek contractual protection for his improved computer forms "because there was such a large pool of potential competitors that an effort to negotiate might result in loss of business." He was aware that the 1972 agreement did not provide him with protection for the computer forms, or even, as in the contract for the previous year, the "computer program."

Tele-Count performed cable counting for Pacific in 1972 and 1973. In the summer of 1973, Pacific supervised and evaluated cable counting by Tele-Count and Vernon. During this evaluation period, Dunn discovered that the computer forms designed by him had been given by Pacific to Vernon for use in the cable counting process. Vernon was not told that the forms were developed by Dunn; nor did the forms carry any mark identifying Tele-Count as the "owner" of the forms. In fact, the forms carried the Pacific logo, and Vernon was told to have the forms printed at its own expense.

Respondents offered testimony of the custom and practice in the computer service industry to protect products and trade secrets by some form of warning, or at least a name or logo on any item considered confidential. The Tele-Count forms did not contain such a warning or claim to be confidential, even though Dunn distributed the forms to numerous telephone companies in the course of his sales presentation.

This appeal challenges only the propriety of the jury instruction on the breach of confidence cause of action, which was as follows: "In order to recover on the theory of breach of confidence, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove each of the following issues: [¶] (1) that plaintiff conveyed substantially secret information to Pacific Telephone; [¶] (2) that the confidential nature of such information was made known to Pacific Telephone before plaintiff's disclosure of it to Pacific Telephone; [¶] (3) that before disclosure by plaintiff, Pacific Telephone had an opportunity to reject receipt of the information on a confidential basis; [¶] (4) that Pacific Telephone voluntarily accepted said information with the understanding and in agreement that it would keep the information confidential; [¶] (5) that Pacific Telephone disclosed such information in breach of confidence; [¶] (6) that Vernon Graphics used said information in its system of counting cables; [¶] (7) that such use was the proximate cause of damage to the plaintiff; and [¶] (8) the nature and extent of such damages. [¶] (9) In addition, as against Vernon Graphics, that Vernon Graphics used said information with notice of the facts that such information was plaintiff's and that Pacific Telephone had breached its duty to plaintiff and wrongfully conspired to misappropriate plaintiff's confidential information."

■ First, appellant complains that the instruction should not have imposed upon it the burden of proving that the information conveyed to Pacific was "substantially secret." Appellant argues that "[i]nformation need not be a trade secret to be the subject of a breach of confidence action."

The trial court's instruction was taken from California case law, which has recognized a cause of action for breach of confidence. (*Faris* v. *Enberg* (1979) 97 Cal.App.3d 309, 321 [158 Cal.Rptr. 704].) The parameters of the breach of confidence action have not yet been well defined, although the basic elements of the tort have been enumerated.

■ The seminal case on breach of confidence is *Faris* v. *Enberg, supra,* 97 Cal.App.3d 309, where the court, after discussing prior authority on the subject, concluded that "copyright protectability of a literary work is not a necessary element of proof in a cause of action for breach of confidence. An actionable breach of confidence will arise when an idea, whether or not protectable, is offered to another in confidence, and is voluntarily received by the offeree in confidence with the understanding that it is not to be disclosed to others, and it is not to be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission. In order to prevent the unwarranted creation or extension of a monopoly and restraint on progress in art, a confidential relationship will not be created from the mere submission of an idea to another. There must exist evidence of the communication of the confidentiality of the submission or evidence from which a confidential relationship can be inferred." (*Id.,* at p. 323.)

It is thus established that information need not be protectable under copyright law to be the subject of a breach of confidence action. (*Faris, supra,* 97 Cal.App.3d 309, 321; *Fink* v. *Goodson-Todman Enterprises, Inc.* (1970) 9 Cal.App.3d 996 [88 Cal.Rptr. 679].) Nevertheless, appellate decisions have uniformly required that an idea must be confidential and novel to warrant protection. (*Faris, supra,* 97 Cal.App.3d at pp. 322-323; *Fink, supra,* 9 Cal.App.3d at p. 1009; *Ojala* v. *Bohlin* (1960) 178 Cal.App.2d 292, 300 [2 Cal.Rptr. 919].) In *Fink, supra,* at p. 1009, the court declared: "The right of plaintiff's work to protection by reason of sufficient novelty and elaboration of the accessible idea is a prerequisite, of course, in the common law copyright count and also, we feel, in the unjust enrichment-breach of confidence count." (See also *Ojala, supra,* 178 Cal.App.2d at p. 300.) In *Faris, supra,* 97 Cal.App.3d at page 324, the court stated that information must be submitted and accepted "in confidence" to state a cause of action for breach of confidence. (See also *Thompson* v. *California Brewing Co.* (1957) 150 Cal.App.2d 469, 474 [310 P.2d 436].) And in

*Thompson, supra,* at page 475, citing Restatement of the Law of Torts, section 757,[2] the court characterized the breach of confidence cause of action as follows: " 'One who discloses or uses another's *trade secret,* without a privilege to do so, is liable to the other if . . . his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the *secret* to him . . . .' " (Italics added.) But the court added that "under appropriate circumstances these principles apply to information which is not a trade secret . . . ." (*Id.,* at p. 476.)

Thus, inclusion of the "substantially secret information" language in the breach of confidence instruction finds support in the law. The cases speak in terms of "novel" information disclosed "in confidence," and doubtless the court would have been better advised to use such language in the instruction. Nevertheless, in our view it was not a misstatement of the law to inform the jury of appellant's burden to prove disclosure of "substantially secret" information to Pacific. A breach of confidence action was found unsupported by the evidence in *Faris* v. *Enberg, supra,* 97 Cal.App.3d 309, with the court noting that "no rational receiver of the communications from [the plaintiff] could be bound to an understanding that a *secret* was being imparted." (*Id.,* at p. 324, italics added.)

A jury instruction must be read as a whole (*People* v. *Galloway* (1979) 100 Cal.App.3d 551, 567 [160 Cal.Rptr. 914]), and interpreted in a manner " 'which will support rather than defeat the judgment if it is reasonably susceptible to such interpretation.' " (*Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 14 [130 Cal.Rptr. 416].) When read in conjunction with the remainder of the instruction, particularly paragraph 2, the challenged language does not misdirect the jury by improperly requiring a showing of a trade secret, as suggested by appellant. The term "substantially secret" information can be, and we find most likely was, reasonably interpreted, particularly in the context used here, as referring to a "novel" idea, conveyed "in confidence," rather than a "trade secret." Accordingly, inclusion of such language in the breach of confidence instruction did not constitute error requiring reversal.

Next, appellant contends that a breach of confidence cause of action does not place upon the plaintiff the burden to show that the "confidential nature" of the information was *"made known"* to the defendant before its disclosure, as stated in the trial court's instruction. Appellant submits that no particular form of notice of confidentiality is required in a breach of

---

[2]This and related sections were omitted from the Restatement Second of Torts.

confidence cause of action, making even constructive notice of confidentiality sufficient.

In support of this argument, appellant relies on *Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d 469, where the court, quoting again from the Restatement of the Law of Torts, comment j to section 757, stated that a confidence does not arise if the defendant " 'does not [have] notice of the confidential character of the disclosure. But no particular form of notice is required. The question is simply whether in the circumstances [the defendant] *knows* or *should know* that the information is [the plaintiff's] trade secret and that its disclosure is made in confidence.' " (*Id.,* at pp. 475-476.)

We do not read *Thompson* as permitting liability to be imposed for mere constructive notice of confidentiality, however. ■ The tort of breach of confidence is based upon the concept of an implied obligation or contract between the parties. (*Landsberg* v. *Scrabble Crossword Game Players, Inc.* (9th Cir. 1984) 736 F.2d 485, 489; *Mann* v. *Columbia Pictures, Inc.* (1982) 128 Cal.App.3d 628, 646 [180 Cal.Rptr. 522]; *Donahue* v. *Ziv Television Programs, Inc.* (1966) 245 Cal.App.2d 593, 606 [54 Cal.Rptr. 130].) It is " 'an obligation in law where in fact the parties made no promise.' [Citations.] It is not based upon apparent intentions of the involved parties; it is an obligation created by law for reasons of justice." (*Fink* v. *Goodson-Todman Enterprises, Ltd., supra,* 9 Cal.App.3d 996, 1010; see also *Faris* v. *Enberg, supra,* 97 Cal.App.3d 309, 322.) Thus, in all cases the gravamen of the tort is an understanding between the parties that an idea is offered upon a condition of confidence. (*Mann, supra,* 128 Cal.App.3d at p. 646; *Faris, supra,* 97 Cal.App.3d at p. 324; *Donahue, supra,* 245 Cal.App.2d at p. 606.)

In *Faris, supra,* at page 324, the court concluded that "evidence of knowledge of confidence or from which a confidential relationship can be implied is a minimum prerequisite . . . ." Similarly, in *Mann, supra,* 128 Cal.App.3d at page 646, the court carefully explained that the plaintiff in a breach of confidence action must demonstrate the defendant's actual knowledge of the condition of confidentiality.

Even in *Thompson, supra,* the necessity for an understanding between the parties and the defendant's "voluntary assumption" of a " " "relation of personal confidence" " ' " was recognized. (150 Cal.App.2d 469, 474-475.) And significantly, the court specifically stated that a confidence cannot be imposed if the defendant " 'has no notice of the confidential character of the disclosure.' " (*Id.,* at p. 476.)

 Thus, by instructing the jury on appellant's burden to establish that the confidential nature "of the forms" was "*made known*" to Pacific by appellant, the trial court properly focused attention upon the element of an understanding between the parties. An understanding that confidential information has been disclosed cannot arise absent "evidence of knowledge of confidence." (*Faris* v. *Enberg, supra,* 97 Cal.App.3d 309, 324.) Actual notice of confidentiality is necessary to establish such knowledge. Mere constructive notice—or a showing that the defendant should have known of the confidential nature of the information imparted—would, in our view, improperly subject a defendant to liability without the requisite understanding or voluntary acceptance of the confidential disclosure. (*Mann* v. *Columbia Pictures, Inc., supra,* 128 Cal.App.3d 628, 646; *Faris, supra,* 97 Cal.App.3d at p. 323; *Ojala* v. *Bohlin, supra,* 178 Cal.App.2d 292, 300.) It is also settled that knowledge of the confidential nature of information must *precede* its disclosure. (*Mann, supra,* 128 Cal.App.3d at p. 646; *Faris, supra,* at p. 324.) We accordingly conclude that paragraph 2 of the breach of confidence instruction was a proper statement of the law.

 Appellant further complains that the breach of confidence instruction was flawed by the inclusion, in paragraph 3, of the "opportunity to reject" requirement. The instruction informed the jury of appellant's burden to prove that Pacific "had an opportunity to reject receipt of the information on a confidential basis" before its disclosure.

In *Faris* v. *Enberg, supra,* 97 Cal.App.3d 309, the court emphasized that "the unsolicited submission of an idea" is not actionable. (*Id.,* at pp. 323-324.) One of the grounds for rejecting the plaintiff's claim of breach of confidence was lack of evidence that the defendant "was given the chance to reject disclosure in advance or that he voluntarily received the disclosure with an understanding that it was not to be given to others." (*Id.,* at p. 324.)

The court in *Donahue* v. *Ziv Television Programs, Inc., supra,* 245 Cal.App.2d 593, quoting from *Desny* v. *Wilder* (1956) 46 Cal.2d 715 [299 P.2d 257], also suggested an opportunity to reject element, explaining: "Although the purveyor of the idea conditions his offer to disclose on an obligation to pay for it, he to whom it is disclosed must have an opportunity to reject disclosure on the terms offered." (*Id.,* at p. 606.)

 An opportunity to reject is mandatory if the defendant is to be charged with having voluntarily assumed the obligation to maintain the confidentiality of disclosed information. (*Ojala* v. *Bohlin, supra,* 178 Cal.App.2d 292, 300; *Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d 469, 475.) Of course, this element may be established by cir-

cumstantial evidence or inferred from circumstances surrounding the disclosure, and a breach of confidence instruction would be more complete by so informing the jury. ▮ But as read to the jury in the present case, the instruction was not erroneous, particularly since the court otherwise instructed the jury that circumstantial evidence and inferences could be used to prove any fact.

▮ Finally, appellant argues that the trial court erred by instructing the jury that breach of confidence requires a showing that the defendant *agreed* to maintain the confidentiality of the disclosed information. Appellant's complaint is with paragraph 4 of the breach of confidence instruction, which included as part of the plaintiff's burden of proof the requirement "that Pacific Telephone voluntarily accepted said information with the understanding and *in agreement* that it would keep the information confidential." (Italics added.) Appellant submits that this part of the instruction improperly interjected elements of contract law into a breach of confidence cause of action.

▮ The breach of confidence tort is not predicated solely upon an express agreement protecting the confidence. (*Ojala* v. *Bohlin, supra,* 178 Cal.App.2d 292, 299-300.) The basis of the breach of confidence action is an obligation created by law for reasons of justice where no contract otherwise exists. (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 508 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; *Faris* v. *Enberg, supra,* 97 Cal.App.3d 309, 322; *Fink* v. *Goodson-Todman Enterprises, Ltd., supra,* 9 Cal.App.3d 996, 1010.) Thus, the tort can be established without proof of a promise. (*Fink, supra.*)

Still, there can be no tortious breach of confidence in the absence of an understanding between the parties that the confidential nature of the information will be maintained. (*Faris* v. *Enberg, supra,* 97 Cal.App.3d 309, 322-323; *Thompson* v. *California Brewing Co., supra,* 150 Cal.App.2d 469, 474-475.) ▮ Accordingly, that part of the instruction requiring appellant to show an "understanding" with Pacific to keep the forms confidential was an accurate statement of the law. By merely amplifying the understanding requirement using the language "understanding and in agreement," the court did not add an element of contract law to the cause of action. The instruction did not require a formal or comprehensive agreement, but only that the parties be "in agreement" on the specific point that the forms should remain confidential. Interpreting the instruction in a manner most favorable to the judgment, as we must (*Merlo* v. *Standard Life & Acc. Ins. Co., supra,* 59 Cal.App.3d 5, 14), we conclude that the trial court

did not improperly impose upon appellant the burden of proving a contract with Pacific.

We suggest that the "in agreement" language be omitted from the instruction in the future. But we are not convinced that inclusion of such language in the present case could have mistakenly led the jury to believe that appellant was not entitled to recover absent an express agreement with Pacific to keep the disclosed information confidential.

Thus, while we find some trivial imperfections in the breach of confidence instruction—matters of semantics really more than substance—we are not persuaded that a result more favorable to appellant would have been reached in the absence of error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *Godfrey* v. *Steinpress* (1982) 128 Cal.App.3d 154, 177 [180 Cal.Rptr. 95].) Specifically, the trial court's use of the phrase "substantially secret" to refer to confidential information did not amount to an error of law and could not have confused the jury. Similarly, the failure of the breach of confidence instruction to inform the jury that Pacific's knowledge of the confidential nature of the information could be proved by circumstantial evidence was not prejudicial in light of the separate instruction imparting the same legal principle to the jury. Finally, we do not see how use of the language "with the understanding and in agreement," in the context of the whole instruction, led the jury to mistakenly believe that appellant's breach of confidence action demanded proof of a contract.

This was not such a close case that minor and insubstantial misstatements in the breach of confidence instruction demand reversal. The documentary evidence, including the contract between the parties, tends to negate appellant's claim of an understanding with Pacific that the forms were to remain confidential. In addition, copies of the forms were sent to other telephone companies without notice of confidentiality. Finally, as to respondent Vernon, the record is particularly devoid of any substantial evidence that it used the forms with knowledge of their confidential nature.

We accordingly conclude that no reversible error was committed. The judgment is affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.