37 Cal.Rptr. 731]

[Civ. No. 27355. Second Dist., Div. Two. Mar. 24, 1964.]

ABRAM APODACA, Plaintiff and Appellant, v. TRINITY LUMBER COMPANY, Defendant and Respondent.

Levy, DeRoy, Geffner, Koszdin & Glow and Jack Levine for Plaintiff and Appellant.

James D. Garibaldi, Warren J. Lane and Abe Mutchnik for Defendant and Respondent.

ROTH, J.—This is an action for damages for personal injuries sustained by appellant while unloading lumber from a flatcar. Judgment predicated upon a verdict of the jury was for appellant and the trial court pursuant to respondent's motion, made an order for judgment notwithstanding the verdict and for a new trial in the alternative on the ground of the insufficiency of the evidence. Appellant appeals from the judgment notwithstanding the verdict and from the order granting a new trial.

Appellant's challenge to the judgment notwithstanding the verdict, requires this court to determine whether on the evidence it can be held as a matter of law that appellant was contributorily negligent.

The rules which govern this court on appeal involving this type of question are trite and bromidic. We restate them as a matter of form.

"In determining, pursuant to a motion for judgment notwithstanding the verdict, the sufficiency of the evidence the court acts in accordance with a defined method. It views the evidence in the light most favorable to the verdict, accords to the verdict the benefit of every pertinent fact, resolves in favor of the verdict all doubts occasioned by conflicting evidence, gives to the evidence supporting the verdict all the value to which it is legally entitled and indulges every legitimate inference that may be drawn therefrom. ... Nor is the credibility of the witnesses adjudged by the trial court." [28 Cal.Jur.2d 680]; *Bulow* v. *Dawn Patrol*, 216 Cal.App.2d 721 [31 Cal.Rptr. 132]; *Shannon* v. *Thomas*, 57 Cal.App.2d 187 [134 P.2d 522].)

4

However, as in the case of a directed verdict or motion for nonsuit, the trial court can hold as a matter of law that an inference has been dispelled where it has been rebutted by clear, positive and uncontradicted evidence not open to doubt. If the fact inferred is necessary to establish an essential element of the case then judgment notwithstanding the verdict is proper. (*Teich* v. *General Mills, Inc.*, 170 Cal.App.2d 791 [339 P.2d 627].)

It has been established in numerous cases "that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and no other; [and] that where there are different inferences . . . one for and one against, the one against will be followed. . . ." (*Anthony* v. *Hobbie*, 25 Cal.2d 814 [155 P.2d 826].) Thus, it is only where no fact is left in doubt and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say as a matter of law, that contributory negligence is established. (*Bady* v. *Detwiler*, 127 Cal.App.2d 321 [273 P.2d 941].) The burden of establishing contributory negligence is upon defendant. If defendant establishes contributory negligence and plaintiff raises no contrary reasonable inference, the court is justified in giving a judgment notwithstanding the verdict.

The record shows that on July 8, 1958, appellant was unloading a flatcar of lumber pursuant to orders of his employer, Lounsberry and Harris. The flatcar had been loaded by employees of respondent in Northern California and consisted of 2 by 4's of various lengths. Most of this lumber was packed in individual, bound stacks or loads, each load being banded with metal strips. However, on each outside edge of the car and on the top of the stacks of banded lumber were stacks of loose, unbanded 2 by 4's.[1] These loose boards were stacked to a level of about 8 feet above the bed of the flatcar.

On each edge of the flatcar six stakes were inserted to keep the load of lumber from falling off the car. These stakes were between 9 and 12 feet high and were held in place by wedges nailed to the bottom of each stake.

Appellant was not normally a forklift operator, but since the beginning of his employment as a lumber handler 10 to

---

[1]Mr. Cordil defined "loose lumber" as that lumber that is added to a car that is not a part of a mechanically handled unit that goes into a car.

11 years prior to the accident, he had had other duties in the yard. These included operating a forklift and acting as a stripper on railway cars. A stripper is one who removes boards called strips that are laid across the individual stacks and then nailed to the car stakes to hold the entire shipment together during transit.

On the morning of July 8, appellant had been directed by his foreman to substitute for one of the forklift drivers. He was first told to load a truck in the Lounsberry yard and at the conclusion of that task to unload the flatcar. At about 9 a.m. appellant drove the forklift toward the flatcar and left the machine about 8 to 10 feet away from the car. Appellant testified that he then walked around the car, looked at the loads and noticed that some of the lumber didn't have bands on it. However, he also testified that the lumber was not leaning against the remaining stakes and that the outside load appeared to be "stuck" properly. A load is "stuck" properly if underneath every six 2 by 4's a piece of wood ⅜ of an inch is inserted and running the depth of a load, thereby stabilizing it. There was evidence to the effect that if properly stuck, a load is safe for unloading.

 Witnesses for appellant testified that the correct method for loading a flatcar is to place the unbanded lumber on the inside of the car instead of the outside edge. That the flatcar was negligently loaded respondent concedes and admits its own negligence.

Lawrence J. Moore, the foreman in charge of appellant's work, testified that according to company rules the forklift operator always checks the car himself "and if there is *reasonable doubt* [emphasis added], that it is unsafe, one thing he must do is stick his fork into the load before removing the stakes. ..." Another witness for appellant, Nick Cordil, who qualified as an expert, also testified that lumber workers unloading a car were always advised to follow the procedure of first inserting the forks if they have any reason to believe the load is unsafe. Appellant, himself, testified that on previous occasions he had been instructed to put the forklift into the load before removing the last stake, but that he didn't do this on the day in question. However, appellant had only operated the forklift a few times in the past; and respondent's witness, Parsons, admitted that all the stakes had been removed from a car in the past without the use of a forklift.

Previous to appellant's arrival at the flatcar, two other men had stripped the car and had removed all the stakes but

three on the left side. These three stakes were left to prevent the loose lumber from falling off the car.

Appellant testified that as he first approached the flatcar, after parking his forklift 8 to 10 feet away, he walked around the car and noticed that there were stakes still standing upright in their sockets in the car, and also noticed the presence of the loose lumber, but that the load appeared safe to him. He then pulled out the remaining stakes, and as he pulled out the last stake some of the loose lumber fell on him.

Even though the appellant admitted that he had been told in the past to insert the forks before unloading, the company rules were to the effect that the load must appear unsafe to the operator, and in this case appellant testified that he inspected the load and that it appeared safe to him. It is also apparent that at previous times it was the custom of forklift operators to remove the lumber without first inserting the forklift. ▉▉▉ It is well established that the conduct of others under similar circumstances is relevant to a determination of what is the proper standard of care in a given situation. (*Lawyer* v. *Los Angeles Pac. Co.*, 161 Cal. 53 [118 P. 237].) This is not to say that in every situation the ordinary practices of men, even though negligent, are determinative of the reasonableness of the act in question. (*Mehollin* v. *Ysuchiyama*, 11 Cal.2d 53 [77 P.2d 855].)

▉▉▉ From the summary of the evidence most favorable to appellant, we cannot hold appellant guilty of contributory negligence as a matter of law. The jury could have drawn the inference that appellant considered and was justified in considering that the load was safe.

▉▉▉ Appellant argues also that the trial court erred in its order granting a new trial. However, "It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse an order granting a new trial on this ground." (*Yarrow* v. *State of California*, 53 Cal.2d 427, 434 [2 Cal. Rptr. 137, 348 P.2d 687].) In this case, such evidence is clearly present.

The judgment notwithstanding the verdict is reversed. The order granting a new trial is affirmed.

Herndon, Acting P. J., and Kincaid, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.