FOURT, J.
 

 Lillian E. Drummond brought an action against the City of Redondo Beach (hereinafter sometimes referred to as the City) for personal injuries which she sustained when her car struck a washout at the edge of the pavement and went into a ditch. She appeals the trial court’s orders granting the City both a judgment notwithstanding the verdict and a new trial.
 

 Appellant contends that the court erred in granting the City's motion for judgment notwithstanding the verdict because plaintiff presented substantial evidence to establish each element of her' ease,' and that the order for new trial is defective because the court failed..t'o adhere, to the.requifeméáts of Code of Civil Procedure, section 657, or to" exercise its discretion pursuant to that section. These contentions are without merit.
 

 
 *713
 
 Drummond charged the City with permitting a dangerous or defective condition to exist along the north edge of Beryl Street as a proximate cause of which her right wheel broke through the roadway and caused her to go into a ditch. The City claimed that no dangerous condition existed on the roadway, that it had no notice of such condition or any time to repair or warn, and that Drummond was contributorily negligent.
 

 Evidence adduced at the trial showed that the accident occurred at about 5 p.m. on February 11, 1963. Lillian Drummond was then traveling home from work along the same route she had taken nearly every working day for the past 10 years. She turned west down Beryl Street, a two-lane street with a double yellow center line dividing the east and west bound traffic lanes. The two traveled roadway lanes constituting Beryl were graded with a 3-inch thick macadam surface covering a 4-to-6-inch base of decomposed granite. The roadway was 14 feet from center line to edge. The main traveled portion, or traffic lane, however, was only 10 feet wide and there was a 4-foot outer strip of dark asphalt, perhaps 2 to 4 inches thick, which sloped down toward a ditch at the far outer edge of the street.
 

 It had been raining heavily and intermittently since February 9, and when Lillian Drummond came to a familiar low spot on Beryl she could see a little water standing at the foot of the hill. Traffic, however, was moving in a normal manner and the street incline beyond the low spot appeared to be dry. She therefore did not slow her speed below 20 miles-per-hour but followed a pickup truck at a prudent distance down the hill and started up the incline. Suddenly she heard a break, as though ice were cracking, and the car dropped, then went into and across the ditch bordering the road, and finally stopped just short of a telephone pole.
 

 When Lillian Drummond got out of her car following the accident, she noticed that although the asphalt crust appeared to be intact, all the underside of sand and dirt had washed away and near the point where her car left the road several large chunks of asphalt had been broken off. Her teen-age son, who came to pick her up after the accident, noticed a crack starting at the far north edge of the roadway which came into the street perhaps two and a half feet. He testified that at its outermost edge this crack formed a ‘1 threshold ’ ’ with the east side of the crack about a foot higher than the west side. Officer Reese, who came along shortly after the accident and
 
 *714
 
 assisted appellant, confirmed her observation that along the extreme northerly edge of the asphalt strip the dirt had washed away and undermined the asphalt edge a distance of approximately 4 to 8 feet. The most severe deterioration was near the scene of the accident where the asphalt appeared to have been undermined to a depth of 10 or 12 inches. Apparently Drummond’s right front tire struck the undermined extreme north edge of the roadway, at the far side of the four-foot strip beyond the traffic lane, so that the undermined portions crumbled and broke off. The officer observed no undermining under the main travel lane and no cracking or breaking in the traffic path. He further observed that traffic was flowing freely in both directions on Beryl Street following the accident.
 

 Mr. Ayers, who had been street department foreman for the City for 10 years prior to the trial, testified that he made regular inspections of the City’s streets and that the City was aware that the asphalt strip on Beryl Street had occasionally washed out at the edges, but there never had been a washout in the main traffic lane. The term “washout” describes a condition which occurs when erosion takes place in the highway. If water is allowed to continue flowing down the eroded “wash” it may so undermine the subsurface that ultimately it will cause a piece of pavement to break away. On February 9 Mr. Ayers discovered a small wash on the north side of Beryl Street, but it was only 6 or 7 inches deep not deep enough to allow an examination of the hardtop from underneath, and there was no evidence of undermining of the pavement. He decided to have the wash repaired and, in the event it should become worse, to place barricades and block off the street. Once more on Februaury 10 he inspected the area and found the wash was approximately 2 inches deeper than it had been on the previous day, but not sufficiently serious to merit concern. Finally, he visited the site after lunch on' February 11 and found the condition unchanged. These inspections which were made for the very purpose of observing rain damage failed to disclose either undermining or indicia of undermining on February 9, 10 or 11. The small wash discovered was situated 4 or 5 feet away from the traveled portion of the roadway and did not interfere with traffic flow. Traffic was undisturbed and flowing in a normal manner on February 10 and 11, hence signs and barricades were deemed unnecessary.
 

 A motion for a judgment notwithstanding the verdict may properly be granted by the trial court only when,
 
 *715
 
 disregarding conflicting evidence and indulging every legitimate inference from plaintiff’s evidence, the court determines that there is no evidence of sufficient substantiality to support the verdict in favor of the plaintiff.
 
 (Bufano
 
 v.
 
 City & County of San Francisco,
 
 233 Cal.App.2d 61, 68 [43 Cal.Rptr. 223] ;
 
 Apodaca
 
 v.
 
 Trinity Lbr. Co., 226
 
 Cal.App.2d 1, 3 [37 Cal.Rptr. 731] ;
 
 Sparks
 
 v.
 
 Allen Northridge Market,
 
 176 Cal.App.2d 694, 699 [1 Cal.Rptr. 595].) Plaintiff acknowledges that she bore the burden to show at the time of trial that (1) the defendant’s property was in a dangerous condition at the time of the accident; (2) her injury was proximately caused by the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of contributing to the kind of injury which she incurred, and that the dangerous condition was either (a) created by the negligent or wrongful act or omission of a city employee acting within the scope of his employment, or (b) known by actual or constructive notice to the city a sufficient time prior to the accident so that protective measures should have been instituted. (Gov. Code, § 835.) A “dangerous condition” is statutorily defined in this context as “a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is sued with due care in a manner in which it is reasonably foreseeable that it will be used.” (Gov. Code, § 830, subd. (a).)
 

 The burden rests upon the plaintiff to establish by a preponderance of the evidence each and every element of her case.
 
 (Rufo
 
 v.
 
 N.B.C. Nat. Broadcasting Co.,
 
 166 Cal.App.2d 714, 719 [334 P.2d 16].) A verdict cannot be upheld by resort to speculation, guess or conjecture
 
 (Martin
 
 v.
 
 Ideal Packing Co.,
 
 156 Cal.App.2d 232, 237 [319 P.2d 95]), and plaintiff must produce evidence of some substance to support each essential fact upon which his case relies
 
 (Guillory
 
 v.
 
 American President Lines, Ltd.,
 
 230 Cal.App.2d 296, 302 [40 Cal.Rptr. 796]). In the instant ease the City may be charged with notice of an apparent defect, but there is no substantial evidence to support the inference that the condition diagnosed by Mr. Ayers was “dangerous,” i.e., that it created a substantial hazard to members of the public engaged in the customary, reasonably foreseeable use of the roadway. “The liability of the municipality is for negligence, which is not to be presumed. Under the statutory liability there can be no negligence in failing to repair or give warning of a condition unless it is one which is known, or in the exercise of
 
 *716
 
 ordinary care would be known to impose an unreasonable risk of injury. If this were not so a municipality would be subject to liability without fault by force of the statute alone, whereas an individual in similar circumstances would be held blameless. The liability statute cannot be given application that would render the municipality an insurer against accidents. Knowledge of the dangerous nature of the condition must be shown. ”
 
 (Ellis
 
 v.
 
 City of Los Angeles,
 
 167 Cal.App.2d 180, 187 [334 P.2d 37].)
 

 The City inspected the wash at the point where plaintiff ’s car left the roadway, indeed, just a few hours before the •accident, and found no undue risk of injury to the public. Had the condition of the roadway deteriorated with unforeseen rapidity in the interim, the City without sufficient notice would have had no duty to undertake protective measures before the accident, but even so there is no indication that further deterioration took place. There is no evidence whatsoever that the traveled traffic pathway was cracked or undermined in any way at or about the time of the accident, and it is undisputed that traffic continued to move normally thereon both before and after the event. On the contrary, the inference clearly appears that plaintiff was contributorily negligent in undertaking to drive on the asphalt shoulder, which is not customary and prudent driving practice. “Vehicle Code section 530 defines ‘roadway’ as meaning
 
 the traveled portion
 
 of a highway. And subdivision (f) of Vehicle Code section 21650 clearly prohibits traveling on or adjacent to the edge of the pavement except when it can be done safely.”
 
 (People
 
 v.
 
 Smylie,
 
 217 Cal.App.2d 118, 121 [31 Cal.Rptr. 360].) Be that as it may, the judgment notwithstanding the verdict was clearly proper since plaintiff failed to adduce sufficient evidence to establish her case.
 

 The trial court thereafter also granted defendant’s motion for a new trial. In view of the conclusions we have reached with respect to the judgment notwithstanding the verdict, there is no reason to discuss the point raised on appeal from the order for new trial. (Code Civ. Proc., § 629.)
 

 The order granting judgment notwithstanding the verdict is affirmed.
 

 Wood, P. J., and Lillie, J., concurred.
 

 A petition for a rehearing was denied November 27, 1967, and appellant's petition for a hearing by the Supreme Court was denied January 3, 1968.